Argued and submitted February 8, reversed and remanded March 16, 2011

Steven T. GRIGGS,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Douglas County,
*Respondents.*

Employment Appeals Board
09AB3034; A143766

250 P3d 448

David C. Force argued the cause and filed the briefs for petitioner.

Mark Amberg argued the cause for respondent Douglas County. With him on the brief were Jona J. Maukonen and Harrang Long Gary Rudnick P.C.

Denise G. Fjordbeck waived appearance for respondent Employment Department.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Claimant seeks judicial review, pursuant to ORS 657.282, of an order of the Employment Appeals Board (board) denying his claim for unemployment benefits because "[t]he employer discharged claimant for misconduct connected with his work." The board determined that claimant's repeated errors concerning the administration of medication and his corresponding documentation "were wantonly negligent violations of the employer's reasonable expectations" because claimant, a person with insulin-dependent diabetes who was having trouble controlling his blood sugar levels, failed to regularly check those levels to ensure that "he was in fit condition to administer and record medications." The dispositive issue on review is whether substantial evidence, ORS 183.482(8)(c), supports the board's essential finding that claimant was able "to check his blood sugar levels and take insulin *as needed*." (Emphasis added.) Because we conclude that substantial evidence does not support that finding, we reverse and remand.

We take the material and procedural facts from the board's order, quoting directly from that order as pertinent. Beginning in 2001, claimant worked as a counselor for Douglas County (the county). At the time that he was discharged, claimant worked at the county juvenile shelter and "was responsible for administering medications to the youths who were housed in the shelter, for documenting his administration of medication in the correct records, and for recording a chain of custody for the medications."

As previously indicated and as the board found,

"Claimant is diabetic. He checked his blood sugar level four times per day. Claimant took insulin three times per day and also took medications to control his blood sugar level. Prior to 2009, claimant worked a regular schedule and was able to check his blood sugar levels at regular intervals. In January 2009, the employer changed claimant's schedule to a split shift. Claimant began experiencing low blood sugar counts that he attributed to the irregular work schedule. It was more difficult for him to check his blood sugar level regularly, especially on Sunday shifts when he and another staff member were the only staff on duty during most of the

shift. Claimant lost consciousness at work on one occasion in February 2009 because his blood sugar level was low. Claimant knew that he became confused and disoriented when his blood sugar was low."

On February 15, 2009, a Sunday, "claimant improperly updated the narcotic record of a youth in custody." In early March, the county "warned" claimant about "failing to follow case assignment and documentation protocols and missing deadlines." Claimant's doctor then "took him off work for two weeks in March * * * [in] an attempt to stabilize his blood sugar level. Claimant submitted documentation from his doctor requesting a stable schedule, but the [county] did not grant him a schedule change or transfer him to a night shift as he requested."

Thereafter, claimant made additional errors relating to administration and documentation of medication, including the failure to administer medication to a juvenile even though he documented that he had. On Sunday, April 26, "claimant administered a narcotic intended for one youth to another individual" and made additional administration errors. Claimant "attributed his errors to low blood sugar caused by the change in his work schedule." Ultimately, on May 11, the county "discharged claimant for endangering youths in his custody by improper administration and recording of drugs."

ORS 657.176(2)(a) provides, in part, that an individual is disqualified from receiving unemployment benefits if the individual "[h]as been discharged for misconduct connected with work[.]" The Employment Department has promulgated rules defining "misconduct" to mean "a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee" or "[a]n act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest." OAR 471-030-0038(3)(a). In turn, "wantonly negligent" means

"indifference to the consequences of an act or series of actions, or a failure to act or a series of failures to act, where the individual acting or failing to act is conscious of his or her conduct and knew or should have know[n] that his or

her conduct would probably result in a violation of the standards of behavior which an employer has the right to expect of an employee."

OAR 471-030-0038(1)(c).

The Employment Department issued an administrative decision denying claimant unemployment benefits because he had been discharged for "misconduct connected with work." Claimant sought a hearing before an administrative law judge (ALJ). The ALJ affirmed the administrative decision, and claimant appealed to the board.

In affirming the earlier decisions, the board reasoned, in pertinent part:

"Claimant attributed his errors to confusion caused by low blood sugar, which he alleged occurred because the employer changed his schedule and failed to provide him with the opportunity to regularly check his blood sugar levels on Sundays. However, claimant did not successfully refute the employer's assertion that *he had sufficient time away from the floor on April 26, 2009, and arguably also on other Sundays, to check his blood sugar levels and take insulin as needed*. Furthermore, claimant knew that he became confused and disoriented if his blood sugar became low. He also knew that he was not checking his blood sugar levels regularly on Sundays. It was incumbent on him to make certain that he was able to administer medications correctly and maintain accurate records, even if he had to leave the floor for a brief period of time to check his blood sugar so that he did not make errors due to low blood sugar. Although claimant alleged that he was not allowed to leave the floor if youths were being disruptive, he knew or should have known that briefly leaving another employee in charge posed a lesser danger to the youths than did administering medication if he had not regularly checked his blood sugar. Claimant's repeated failures to ensure that he was in fit condition to administer and record medications were wantonly negligent violations of the employer's reasonable expectations."

(Citations to record omitted; emphasis added.)

Thus, at its core, the board's reasoning and result depends on the proposition that claimant was able to check his blood sugar as needed while he was working but chose not

to do so. In other words, the board's determination that claimant's repeated failures to regularly monitor his blood sugar to ensure that he could properly administer and record medications were "wantonly negligent" violations of the county's reasonable expectations was necessarily predicated on a factual premise—*viz.*, claimant was able to monitor his blood sugar levels *as needed.*

Ultimately, the board concluded that the county "discharged claimant for misconduct connected with his work" and that claimant "is disqualified from receiving unemployment insurance benefits." Claimant seeks judicial review of that order.

On review, claimant's primary contention is that the board erroneously concluded that he had engaged in "misconduct" as defined in ORS 657.176(2)(a) and OAR 471-030-0038(3)(a) by "expand[ing] the definition of 'wantonly negligent' [in OAR 471-030-0038(1)(c)] to encompass [his] failure to control his diabetes adequately." Specifically, claimant asserts that his low blood sugar levels occurred when "he did not feel free to stop working, leave the presence of the delinquent youths he was guarding, and take sugar levels, and inject the appropriate dose of insulin" and that

"[t]he 'failure to act' which the [board] found to be wanton, consisted of the claimant's occasional conclusions that he could not do that, which sometimes caused him to suffer low blood sugar levels to the point of causing confusion and unconsciousness. But the [board] did not find that the claimant was 'indifferent' to the consequences of such episodes; and could not have made such a conclusion in the face of the factual findings that the [county] required him to encounter those risks * * *."

(Boldface in original omitted.) Further, claimant contends that the board's determination that his "low blood sugar levels were the result of his own wanton negligence * * * is insufficiently reasoned and unpersuasive * * * and is not supported by substantial evidence or substantial reason."

The gravamen of claimant's position on review is that, under a proper understanding and application of OAR 471-030-0038(1)(c), the record does not support a determination that he was "indifferen[t] to the consequences of" failing

to monitor his blood sugar. That legal contention necessarily encompasses a substantial evidence challenge to the board's predicate finding that claimant was, in fact, able to monitor his blood sugar levels *as needed* while he was working. That is so because, unless the circumstances of his employment permitted claimant to monitor his blood sugar levels as needed, he cannot be deemed to have been "indifferent" to the consequences of any such failure.

In response to that challenge, the county remonstrates that one of the findings supporting the board's conclusion is that "[c]laimant was able to leave the floor on Sundays to check his blood sugar levels and take insulin as needed." Specifically, the county contends that, although "[c]laimant asserts that he did not have the opportunity when he worked on Sundays to regularly check his blood sugar levels," the board "specifically found that claimant failed to establish that fact" and that the county "presented evidence that claimant was able to take breaks and be away from the shelter floor."

We need not resolve claimant's legal contention that the board misconstrued the meaning of the term "wantonly negligent," OAR 471-030-0038(1)(c). That is so because, for the reasons explained below, we conclude that substantial evidence did not support the board's predicate finding that claimant "had sufficient time away from the floor on April 26, 2009, and arguably also on other Sundays, to check his blood sugar levels and take insulin as needed."

Substantial evidence exists to support a finding "when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). "It is well established that reasonably drawn inferences may constitute substantial evidence." *Crainic v. Multnomah Cty. Adult Care Home Program*, 190 Or App 134, 144, 78 P3d 979 (2003). However, as we explained in *Crainic*,

" '[t]he substantial evidence rule is not entirely dispositive in reviewing findings which embody inferences. An inference has two parts: a primary fact plus a deduction. The evidence directly establishes only the truth of the primary fact or facts from which an inference may be derived * * *. Rational bases may exist for more than one inference

to be drawn from the same primary fact, and the factfinder (*i.e.*, the agency) has the task to decide which one to draw. *The court does not substitute its judgment as to which inference should be drawn, but it must review for the existence of a rationale.* The rationale is reviewed for soundness, not for conformity to judicial preference. Judicial review of an inference is thus in two stages: (1) whether the basic fact or facts are supported by substantial evidence, and (2) whether there is a basis in reason connecting the inference to the facts from which it is derived. It is a twofold review for substantial evidence and, in a sense, for "substantial reason." ' "

*Id.* at 144-45 (quoting *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 271, 639 P2d 90 (1981)) (emphasis and omissions in *Crainic*).

Here, at the hearing before the board, the only evidence that the county offered to demonstrate that claimant could leave as needed to monitor his blood sugar was a chronology that was prepared by the facility's manager after the manager's review of video of "the shelter activities" on the morning of Sunday, April 26.[1] As noted, and found by the board, on the Sunday shift, claimant and one other staff member "were the only staff on duty during most of the shift." The employer's representative read that chronology into the record, which concluded with the facility manager's statement that

" '[claimant's] claim that he did not have a chance to leave the floor and that the detention staff were not available to help out did not match what the camera view of the shift indicates. * * * [Claimant] had assistance of his co-workers and was able to leave the shelter floor and was able to take breaks.' "

The chronology, as recited, described the following sequence: (1) Claimant arrived after his coworker at approximately 7:05 a.m. (2) Between his arrival and the end of the

---

[1] The employer's representative testified that there are "cameras throughout the facility" so that "whenever an incident happens, we do have * * * the ability to go back and * * * review the camera and take a look and see * * * kind of what occurred" and that the review is used "as management oversight" to determine "whether what's in [an] incident report is * * * accurate." Further, according to the employer's representative, "the camera system does not pick up audio."

period described in the chronology (shortly after noon), there were two "medication passes"—that is, as we understand the record, two time periods during which claimant administered medication to the juveniles—one of which occurred around 9:00 a.m. and the other which occurred around noon. Significantly, however, the chronology does not indicate or specify when claimant administered "a narcotic intended for one youth to another individual" or when he committed the additional administration errors that day, *i.e.*, other actionable conduct. (3) Before the first medication pass, the other staff person who was working that Sunday left the floor to take a break. (4) Claimant also took at least two short breaks that were no longer than nine minutes in length—one shortly after his arrival for the day and the other around 11:30 a.m. (5) At some points, claimant and the other staff person each left "the floor" for various purposes (*e.g.*, to retrieve a breakfast cart, to take several juveniles to a different location for "check in"), leaving the other alone on the floor. (6) On three separate occasions, other persons—that is, "detention staff" —were also on the floor.

Because the chronology was the only evidence that the county offered to demonstrate that claimant could leave as needed to monitor his blood sugar, it necessarily was the evidence on which the board based its dispositive finding. Stated differently, the chronology was the sole evidence from which the board inferred that claimant "had sufficient time away from the floor on April 26, 2009, and arguably also on other Sundays, to check his blood sugar levels and take insulin as needed." However, for the reasons that follow, the facts established by the chronology provide no " 'basis in reason,' " *Crainic*, 190 Or App at 145 (quoting *Roseburg City Firefighters*, 292 Or at 271), to support the board's derivative inference that claimant was able to leave the floor as needed" to check his blood sugar levels.

The critical—and dispositive—distinction is the difference between (a) being able to leave the floor *on occasion* and (b) being able to leave the floor *whenever necessary* to monitor blood sugar levels. The videotape chronology evinced the former—but that "primary fact" is insufficient, as a matter of logical reason, to permit an inference of the latter.

In particular, the chronology, covering approximately five hours of a single shift on a single Sunday, showed that claimant took one break shortly after beginning work and another break approximately four hours later. In the interval between those two breaks, the chronology shows that, although claimant occasionally left the floor to perform work-related tasks and that other persons, including his coworker, were sometimes present as he was supervising juveniles, there was at least one occasion that claimant was alone on the floor supervising juveniles while the other staff member was working with several of the juveniles in a different location. There is no evidence in this record that the county ever authorized claimant to leave juveniles alone and unsupervised. Thus, an inference that claimant could have left the floor to monitor his blood sugar levels as necessary at that time—or, indeed, at other times during his employment when (because of reduced Sunday staffing) he was alone supervising juveniles—is unsupportable on this record.[2]

In sum, the board's inference-based finding that claimant "had sufficient time away from the floor on April 26, 2009, and arguably also on other Sundays, to check his blood sugar levels and take insulin as needed" is unsupported by substantial evidence. That, in turn, subverts, the board's derivative determination that claimant had been "wantonly negligent" with respect to the failure to self-monitor his blood sugar levels as necessary—and, thus, because of "misconduct connected with his work" was disqualified from receiving unemployment benefits.

Reversed and remanded.

---

[2] The board, as noted, observed that claimant "knew or should have known that briefly leaving another employee in charge posed a lesser danger to the youths than did administering medication if he had not regularly checked his blood sugar." That observation does not address circumstances in which claimant was alone, without his coworker present or available. In all events, characterizing an employee's conduct, when faced with such a Hobson's choice, as "indifference," partaking of "misconduct," is at least problematic.